UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
at PADUCAH
(*Electronically Filed*)

| | |
|---|---|
| KENTUCKY LABORERS' DISTRICT COUNCIL FOR AND ON BEHALF OF ITS AFFILIATED LOCAL UNION 1214, <br><br> *Plaintiff,* <br><br> v. <br><br> THALLE CONSTRUCTION CO., INC., <br><br> *Defendant.* | CIVIL ACTION NO. 5:23-cv-137-BJB <br><br> JUDGE _____ |

\* \* \*\* \*\* \*\* \*\*

**COMPLAINT TO COMPEL ARBITRATION**

Plaintiff Kentucky Laborers' District Council for and on behalf of its affiliated Local Union 1214 (the "Union"), by counsel, hereby brings this Complaint to Compel Arbitration against Defendant Thalle Construction Co., Inc. ("Thalle") under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. In support, the Union alleges as follows:

**PARTIES**

1. The Union is a labor organization representing employees in an industry affecting commerce as those terms are defined in Section 2(5) of the National Labor Relations Act of 1935 ("NLRA"), 29 U.S.C. § 152(5). The Union maintains its principal place of business in Paducah, Kentucky.

2. The Union has members who are building and construction employees.

1

3. Thalle is a foreign corporation and an employer as defined in Section 2(2) of the NLRA, 29 U.S.C. § 152(2).

4. Thalle is an employer primarily engaged in the building and construction industry within the meaning of Section 8(f) of the NLRA, 29 U.S.C. § 158(f).

## JURISDICTION AND VENUE

5. Original federal question jurisdiction is vested in this Court under 28 U.S.C. § 1331 and Section 301(a) of the LMRA, 29 U.S.C. § 185(a), as this Civil Action is a suit for violation of a contract between Thalle and the Union.

6. This Court has specific *in personam* jurisdiction over Thalle because it purposely availed itself of the privilege of conducting activities within the Commonwealth of Kentucky and this action arises from Thalle's acts or omissions that took place therein.

7. Venue is proper in this District under Sections 301(a), (c) of the LMRA, 29 U.S.C. § 185(a), (c), because this Court has jurisdiction over both Thalle and the Union. The Union maintains its principal office within this District, and its duly authorized officers and agents are engaged in the representation of its Thalle employee members within this District.

## FACTUAL ALLEGATIONS

8. The Union and Thalle are parties to a "pre hire" collective bargaining agreement arising under Section 8(f) of the NLRA, 29 U.S.C. § 158(f) ("CBA"), which is attached hereto as the Union's **Exhibit A**.

9. The CBA encompasses the Project known as the US Army Corps of Engineers, Nashville District, Kentucky Lock Addition Downstream Locks Monolith (the "Project"), and is effective from March 1, 2022, until the Project is completed.

10. The CBA provides in its Article 2 that "The Management of the Employer's work and business, and the direction of the working force… is vested exclusively in the Employer[1], provided, however, that this *shall not be exercised*… in any manner contrary to the provisions of…" the CBA. **Ex. A** Art. 2 (emphasis added).

11. Article 6 of the CBA, titled "TRADE JURISDICTION", goes on to provide that "Union trade jurisdiction shall generally apply only to manual construction trade work described in Appendix No 1[2], Groups 1 through 4 which is performed [by] Contractors' employees at the Project. The Contractor will assign work to who he deems to be the most appropriate craft." *Id.* Art. 6. Article 6 of the CBA then goes on to exclude "other work" from the CBA that is not at issue here. *See ibid.*

12. Group 1 of the CBA's Appendix No. 1 unambiguously includes, *inter alios*, "flagmen" and "signalmen". *Id.* App. No. 1.

13. Article 12 of the CBA provides, in pertinent part:

---

[1] Thalle is variously referred to as either the "Contractor", "Employer" or "Thalle" in the CBA. CBA Preamble.
[2] It appears that Appendix No. 1 is mislabeled as Appendix No. 2—which is also the label for the Appendix that immediately succeeds it—so Article 6 can only be referring to *the first* Appendix No. 2, which will be referred to as Appendix No. 1 throughout this pleading.

3

> <u>The Contractor will assign work to who he deems to be the most appropriate craft.</u> Assignment of work and settlement of jurisdictional disputes involving the Unions will be handled in the following manner:
>
> The Employer has the sole responsibility to determine the *initial work assignment* and agrees to make such work assignment in accordance with General Trade Practice. However, the assignment of work shall be within the discretion of the Contractor and shall not be subject to dispute via arbitration or any other mechanism under this Agreement or any other agreement. All jurisdictional disputes involving the Union and any other union, or a contractor covered by this Agreement *shall be subject to the… Arbitration provisions of this Agreement exclusively*. No Contractor shall be liable to any party for any claim for damages, including but not limited to a claim for wages or benefit fund contributions, arising out of an assignment *or reassignment* of work under this Agreement or any other agreement.

*Id.* Art. 12 (emphases added, underlining in original).

14. Finally, Article 13-B of the CBA provides that "all disputes or grievances between the Union and any other contractor to which [the CBA] applies arising under [the CBA]…" shall be subject to binding arbitration. *Id.* Art. 13-B.

15. Article 13-B of the CBA, titled "GRIEVANCE AND ARBITRATION PROCEDURE" is the mandatory mechanism the Parties agreed would apply to resolve any and all disputes arising under the terms and conditions of the CBA.

16. At all times relevant hereto, Thalle initially assigned Union members—exclusively—as "flagmen" and/or "signalmen" to flag cranes in the lock chamber on the Project. Thalle continued that practice of exclusively assigning Union members as "flagmen" and/or "signalmen" in the lock chamber unabated until the events that give rise to this Civil Action.

17. Indeed, Union members were also exclusively responsible for flagging cranes in the lock chambers on both the Olmsted Locks and Dam Project and the Smithland Locks and Dam Project with the United States Army Corps of Engineers.

18. On or about early July of 2023, Thalle reassigned non-Union members as "flagmen" and/or "signalmen" to flag cranes in the lock chamber on the Project. By way of example, Thalle reassigned Nash, Clark and Resendez as "flagmen" and/or "signalmen" in the lock chamber, none of whom are members of the Union.

19. The Union objected to that reassignment because those flagmen/signalmen were initially assigned to the Union. So, in accordance with Step 1 of Article 13-B of the CBA, the Union's Steward attempted to resolve Thalle's reassignment of non-Union members as "flagmen" and/or "signalmen" in the lock chamber via oral discussion with the Project's superintendent within three working days after the offending reassignment(s).

20. The dispute was not resolved within five working days after that oral discussion, so, in accordance with Step 2 of Article 13-B of the CBA, the Union reduced its grievance to writing, and filed it with Thalle (the Union's "Grievance") on or about July 13, 2023. The Union's Grievance is attached hereto as the Union's **Exhibit B**.

21. The Grievance states, in relevant part: "The Red hats flagging cranes in the lock chamber, on the job site. This is 100% Laborers' work (Name of three red hats: NASH, CLARK, RESENDEZ)". **Ex. B**.

22. In accordance with Step 2 of Article 13-B of the CBA, a business representative of the Union met with a responsible staff representative of Thalle and attempted to settle the Grievance.

23. On or about July 20, 2023, Thalle's Senior Project Manager, Shelton W. Burch, sent a letter to the Union rejecting the Union's Grievance on its face. Thalle's letter rejecting the Union's Grievance is annexed hereto as the Union's **Exhibit C**.

24. The Union's Grievance was not settled within ten working days after referral to Step 2 of Article 13-B of the CBA. So, in accordance with Step 3 of Article 13-B of the CBA, the Union, by counsel, sent a letter to Shelton W. Burch, Senior Project Manager of Thalle, on or about July 24, 2023, in an effort to agree on a neutral arbitrator. The Union's Step 3 letter is attached hereto as the Union's **Exhibit D**.

25. Thalle never made any effort to agree on a neutral arbitrator. So, in accordance with Step 3 of Article 13-B of the CBA, the Union filed a Demand for Arbitration with the American Arbitration Association (the Union's "Demand for Arbitration" filed with the "AAA") on or about August 5, 2023, strictly complying with the terms of Step 3 of Article 13-B of the CBA, and the AAA's Labor Arbitration Rules. The Union's Demand for Arbitration is attached hereto as the Union's **Exhibit E**.

26. On or about August 7, 2023, Thalle, by counsel, sent an email to the Union, by counsel, suggesting that the Parties schedule a phone call to amicably resolve the dispute.

27. The Parties participated in a teleconference, in an effort to amicably resolve the dispute, but, unfortunately, were unable to do so.

28. On or about August 9, 2023, Thalle sent a letter to an agent of the AAA, wherein Thalle rejected the Union's Demand for Arbitration. Thalle did not serve a copy of its August 9th letter upon the Union, but the AAA enclosed a copy of Thalle's August 9th letter with a letter of its own, dated August 18, 2023, whereupon the AAA requested comments from the Union on Thalle's August 9th letter on or before August 25, 2023. The AAA's August 18, 2023, letter and Thalle's August 9, 2023, letter are collectively annexed hereto as the Union's **Exhibit F**.

29. On August 25, 2023, the Union filed its comments to Thalle's August 9th letter with the AAA and served a copy of its comments on Thalle. The Union's comments to Thalle's August 9th letter are annexed hereto as the Union's **Exhibit G**.

30. On or about August 29, 2023, AAA sent a letter to the Parties, acknowledging receipt of Thalle's August 9th letter and the Union's August 25th comments to that letter, and making the following administrative determination:

> The issue before the American Arbitration Association (the AAA) is whether the filing requirements contained in the AAA's Rules have been met by the filing party. After review of the file, the AAA has made an administrative determination that they have met the filing requirements by filing a demand for arbitration providing for administration by the AAA under its Rules. *Accordingly, in the absence of an agreement by the parties or a court order staying this matter, the AAA will proceed with the administration of the arbitration.* Therefore, we encourage the parties to agree on a neutral.

**Ex. H** (emphasis added). The AAA also inquired as to whether the Union would pay Thalle's portion of the administrative fees and seek recovery of those fees through the arbitrator's award. The AAA's August 29, 2023, letter is annexed hereto as the Union's **Exhibit H**.

31. On September 14, 2023, the Union, by counsel, advised an agent of the AAA that it would pay Thalle's portion of the administrative fee and seek reimbursement from the award of the arbitrator, and that agent of the AAA prepared an invoice on or about September 15, 2023. A copy of the email chain enclosing the invoice is annexed hereto as the Union's **Exhibit I**.

32. The Union paid the AAA's invoice, and on September 20, 2023, the AAA provided the Parties with a list of arbitrators, in accordance with the AAA Labor Arbitration Rules. The September 20, 2023, email from the AAA enclosing a list of arbitrators is annexed hereto as the Union's **Exhibit J**.

33. On or about September 27, 2023, an agent of AAA sent the Parties an email, which responded to a September 20, 2023, email from Thalle, by counsel—an email that the Union was not served—whereupon the AAA appeared to reverse its August 29th administrative determination:

> Dear parties, [i]n response to both contentions regarding the demand for arbitration, the AAA is not determining the arbitrability in this matter. The request was for a list only and as such the list was sent. Therefore, the AAA file is considered closed and any discussion regarding continuing with arbitration is to be decided amongst the parties and not with AAA.

**Ex. K**. The September 27, 2023, email from the AAA is annexed hereto as the Union's **Exhibit K**.

34. To date, the Union and Thalle have not scheduled an arbitration for the above referenced dispute nor has an arbitrator been selected.

## CAUSES OF ACTION

### COUNT I: BREACH OF CONTRACT

35. Plaintiff incorporates the allegations of Paragraphs 1 through 34 as if fully set forth herein.

36. Thalle made an offer for the Union to enter into a "pre hire" union shop arrangement with it arising under Section 8(f) of the NLRA, 29 U.S.C. § 158(f) to work on the Project.

37. Thalle's offer was negotiated and reduced to writing in the CBA.

38. The Union accepted Thalle's offer by executing the CBA and performing according to its terms.

39. The CBA was supported by adequate consideration, because the Union agreed to, *inter alia*, provide Thalle with qualified laborers in accordance with the terms of the CBA, and Thalle agreed to, *inter alia*, an agency shop arrangement and specific hiring process, including an agreement "to notify the Union when additional or replacement employees are needed…", whereupon the Union agreed "to furnish on a non-discriminatory basis, qualified employees to perform the necessary work when so notified within a reasonable time, not to exceed 24 hours, after receiving the request from the Employer." **Ex A** Art. 4(B).

40. The CBA was further supported by the consideration of Thalle's agreement to compensate Union members and contribute to fringe benefits in accordance with the terms therein. *Id.* Art. 15, App. No. 2.

41. The Parties had a meeting-of-the-minds to perform in accordance with the terms of the CBA.

42. The CBA also provided for a mandatory dispute resolution process contained in its Article 13-B, potentially culminating in arbitration before the AAA.

43. By providing for arbitration with the AAA in Article 13-B of the CBA, the Parties agreed to make the AAA's Labor Arbitration Rules a part of their agreement as if fully set forth therein. *See* AAA Arbitration Rules (July 1, 2013), Rule 1.

44. That means that the Parties agreed that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." *Id.* Rule 3(a).

45. The Union performed under the CBA, or its performance was waived by Thalle.

46. All conditions precedent to Thalle's performance under the CBA have occurred.

47. Thalle materially breached Articles 2, 4(B), 6, 12 and 15 of the CBA by reassigning non-Union members as flaggers in the lock chamber, despite the understanding of the Parties, and their consistent and unbroken course of performance, course of dealing and usage of trade to the contrary.

48.     Thalle also materially breached its agreement to resolve the dispute from which this Civil Action arises via binding arbitration before the AAA, in accordance with Article 13-B of the CBA.

49.     In addition, all agreements consummated in the Commonwealth imply a duty of good faith and fair dealing into their terms by operation of law.

50.     Thalle's unilateral refusal to arbitrate the Grievance has been willful, in bad faith, and it constitutes a blatant disregard of Thalle's obligations under the CBA, including the implied covenant of good faith and fair dealing.

51.     The Union seeks specific performance of Thalle's promise to resolve the instant dispute via arbitration before the AAA under Article 13-B of the CBA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Union respectfully prays that this Court:

a.      Order Defendant Thalle to specifically perform in accordance with the Parties' CBA, and arbitrate the Grievance with the AAA;

b.      Award the Union all reasonable costs, expenses, and attorney's fees incurred in connection with this action; and

c.      Grant such other and further relief as the Court may deem just and proper.

Dated: October 10, 2023,	Respectfully submitted,

*/s/ Peter J. Jannace*
David O'Brien Suetholz
Peter J. Jannace
HERZFELD, SUETHOLZ, GASTEL,
LENISKI & WALL, PLLC
515 Park Avenue
Louisville, KY 40208
Tel: (502) 636-4333
Fax: (502) 546-6018
Email: dave@hsglawgroup.com
          peter@hsglawgroup.com

***Counsel for Plaintiff Laborers International Union of North America, Local No. 1214***